**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| John Clark Buchanan, II, | No. CV-22-01482-PHX-SMB |
| Plaintiff, | **ORDER** |
| v. | |
| Randhir Gandhi, et al., | |
| Defendants. | |

Before the Court are two motions by Plaintiff regarding the same foreclosure and eviction. The first is Plaintiff's Motion for Non-Judicial Temporary Restraining Order to Permanent Injunction & Demand for Emergency Hearing to Stop or Stay Proposed Sale of 730 North Cedar Ridge Drive, Oracle, Arizona, 85623 Due to Pending Title Dispute & Wrongful Foreclosure Lawsuit Stay Until Trial. (Doc. 2). Defendants filed a Response (Doc. 9), and Plaintiff filed a Reply (Doc. 20). Plaintiff filed a second, nearly identical Motion putting forth the same arguments and requesting the same relief. (*See* Doc. 17.) Plaintiff requested oral argument, but because the Motion is fully briefed, the Court denies the request as it would be unnecessary. *See* LRCiv 7.2(f) ("The Court may decide motions without oral argument."). The Court denies both Motions for the reasons discussed below. As such, Defendants' Motion to Strike Plaintiff's second Motion (*see* Doc. 28) is denied as moot, and Defendants' need not file a Response to (Doc. 17).

**I.     BACKGROUND**

On July 26, 2005, Plaintiff and Bank of America, N.A. ("BANA") executed a

Promissory Note titled "Bank of America Equity Maximizer Agreement and Disclosure Statement" ("Loan Agreement"), which detailed Plaintiff's $150,000 credit line to purchase the property in question. (*See* Docs. 9 at 3; 9-1 at 2–3, 9.) Plaintiff agreed to pay the total of all credit advances and the costs and expenses that secured his credit line. (Docs. 9 at 3; 9-1 at 2.) The Promissory Note was secured by a Deed of Trust. (Docs. 9 at 3; 9-2 at 7.) The Deed of Trust was signed by Plaintiff and Theresa Buchanan. (Docs. 9 at 3; 9-2 at 2.) On August 15, 2005, the Deed was recorded in the Pinal County Recorder's Office as Instrument No. 2005-104177. (Docs. 9 at 3; 9-2 at 2.)

BANA executed a Notice of Substitution of Trustee on August 10, 2016, naming Quality Loan Service Corporation as the Substitute Trustee under the Deed of Trust. (Docs. 9 at 3; 9-3 at 2.) BANA recorded the Notice of Substitution of Trustee with the Pinal County Recorder's office. (Docs. 9 at 3; 9-3 at 2.) On December 27, 2019, BANA assigned all interests in the property to the beneficiary through its servicing agent, Defendant Select Portfolio Servicing, Inc. ("SPS"). (Docs. 9 at 3–4; 9-4 at 2.)

Plaintiff's two Motions do not provide any factual background on his Loan Agreement payment history. (*See* Docs. 2; 17.) Therefore, Defendants cite to Plaintiff's Complaint (Doc. 1 at 13 ¶ 15.2) to assert that Plaintiff made timely payments under the Loan Agreement for eleven years, ceased making regular and timely payments in 2016, and stopped making payments entirely in 2017. (*See* Doc. 9 at 4.) But specifically, Plaintiff's Complaint asserts that:

> Beginning in 2005 and continuing until June, 2016 the plaintiff made timely payments to Bank of America; on time and never missing a payment; until Bank of America several times on a recorded line said, (via their Bank of America Agents) "Stop making payments". On a recorded line. In January of 2017 it was agreed by Bank of America Agents and I to pay $300 per month during bankruptcy direct to them for purported mortgage; this lasted until approximately October of 2017, then BANK OF AMERICA agents said approximately 7 times in multiple recorded conversations to stop making payments. So I, John-Clark: Buchanan II stopped making payments.

(Doc. 1 at 13 ¶ 15.2.)

Next, Defendants assert that between 2016 and 2021, either BANA or SPS offered

loan assistance to Plaintiff. (*See* Docs. 9 at 4; 9-5; 9-6.) Defendants claim that Plaintiff either failed to provide the necessary documents or rejected the offers for loan assistance. (Doc. 9 at 4.) Defendants further claim that BANA and SPS provided notices to Plaintiff regarding potential foreclosure due to missed payments. (*Id.*) Defendants allege that on November 12, 2019, SPS delivered a letter to Plaintiff, informing Plaintiff that a foreclosure sale for his property was scheduled for December 4, 2019. (Doc. 9-6.) Ultimately, the foreclosure sale was continued for nearly three years, and the property was eventually sold on September 6, 2022. (*See* Docs. 9-7; 9-8.)

## II.  LEGAL STANDARD

Plaintiff's Motions appear to seek Temporary Restraining Orders ("TRO") and permanent injunctions of the sale of his property and any eviction efforts. A party seeking preliminary injunctive relief under Federal Rule of Civil Procedure 65 must show that: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of injunctive relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest.[1] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Lopez*, 680 F.3d at 1072 (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis omitted)); *see also Winter*, 555 U.S. at 24 ("A preliminary injunction is an extraordinary remedy never awarded as of right."). A party seeking a permanent injunction must establish the same factors, but also demonstrate actual success on the merits. *Indep. Training & Apprenticeship Program v. Cal. Dep't of Indus. Rels.*, 730 F.3d 1024, 1032 (9th Cir. 2013).

The analysis for granting a TRO is "substantially identical" to that for a preliminary

---

[1] Where a party "can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in the [party]'s favor, and the other two *Winter* factors are satisfied." *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (cleaned up). Under this Ninth Circuit "serious questions" test, "[t]he elements . . . must be balanced, so that a stronger showing of one element may offset a weaker showing of another." *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012).

injunction. *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). Unlike a preliminary injunction, *see* Fed. R. Civ. P. 65(a), a temporary restraining order ("TRO") may be entered "without written or oral notice to the adverse party." Fed. R. Civ. P. 65(b). A TRO may issue, *ex parte*, if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant *before* the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b) (emphasis added); *see also* LRCiv 65.1.

## III. DISCUSSION

### A. Motions for TRO and Permanent Injunction to Stop or Stay the Sale of Plaintiff's Property

Plaintiff's Motions, which in part invites the Court to stop or stay the sale of his property by TRO or permanent injunction, is moot. The property was sold by non-judicial foreclosure on September 6, 2022, and is now owned by the beneficiary, MEB Loan Trust IV. (*See* Doc. 9-8.) "A claim is moot 'when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.'" *Alvarez v. Hill*, 667 F.3d 1061, 1064 (9th Cir. 2012) (quoting *U.S. Parole Comm'n v. Geraghty*, 445 U.S 388, 396 (1980)). Because the foreclosure sale occurred, Plaintiff lacks a live or legally cognizable interest for this Court to temporarily or permanently enjoin the property's transfer. For these reasons, Plaintiff's Motions to stop or stay the foreclosure are denied.

### B. Motions for TRO and Permanent Injunction to Stop Any Eviction Efforts

Plaintiff's Motions also request the Court to stop or stay Plaintiff's impending eviction. However, the Court finds that Plaintiff's claims fail to establish any of the four *Winter* factors for granting a TRO or permanent injunction.

1. <u>Plaintiff is unlikely to succeed on the merits of this action.</u>

For the Court to grant a TRO, Plaintiff must demonstrate a likelihood of success on the merits. *Winter*, 555 U.S. at 20. And for a permanent injunction, Plaintiff must establish

actual success on the merits. *Indep. Training & Apprenticeship Program*, 730 F.3d at 1032. Plaintiff asserts numerous claims, many of which are completely without citation to legal authority. These include claims that: (1) Defendants failed to prove there was any debt because the promissory note was not included in the "notice of default and election to sell document"; (2) that Defendants' cannot admit the Deed of Trust, Notice of Default, or election to sell documents into evidence because the promissory note was not admitted; (3) Defendant's did not have the legal authority to exercise the power of sale clause or foreclose upon the home; (4) a question of lawful consideration exists; and (5) there is no fact witness to testify. (*See* Docs. 2; 17.) Because Plaintiff failed to present any legal authority supporting these assertions, it is unlikely Plaintiff would succeed on the merits of this claim. It follows that Plaintiff has not established actual success on the merits, either. As such, these claims fail factor one.

Plaintiff raises other claims with citation to legal authority, which the Court addresses separately. First, Plaintiff states in a heading that "[t]he Attorneys violated Arizona Lien Laws." (Docs. 2 at 3; 17 at 3.) Plaintiff proceeds to cite and describe the crime of forgery under Arizona state law but makes no factual assertions as to how A.R.S. § 13-2002 was violated here. (Docs. 2 at 3–4; 17 at 3–4.) Because Plaintiff asserts no factual argument for a statutory violation, this claim fails under factor one.

Plaintiff also alleges Defendants violated federal wire fraud laws, citing 18 U.S.C. § 1343. However, Plaintiff merely states that Defendants used wire communications such as "facsimile's, emails and the internet to accomplish this scheme to defraud the homeowner, and the courts by causing to be sent, filed, and record mortgage documents which they knew or should have known to be fraudulent." (Docs. 2 at 7; 17 at 7.) Beyond this sweeping allegation, Plaintiff provides no supporting facts, evidence, or legal authority to support his claim. Therefore, this claim fails factor one.

Next, Plaintiff alleges that Defendants violated the Fair Debt Collection Practice Act, citing 15 U.S.C. § 1692, et seq., because Defendants misrepresented themselves as having legal authority to collect debts secured by the Deed of Trust. But Plaintiff fails to

cite legal authority supporting this proposition, or how Defendants unlawfully exercised their rights under the applicable agreements. (*See* Docs. 9-1–9-4; 9-7–9-8.) At most, Plaintiff cites to various Uniform Commercial Code ("UCC") provisions, all of which are irrelevant to his asserted claim of fraud and misrepresentation. This claim fails factor one.

Plaintiff subsequently raises arguments that Defendants had a scheme to defraud because "the creditor does not provide full disclosure, and the contract is extremely deceptive and unconscionable." (Docs. 2 at 8; 17 at 8.) To support this claim, Plaintiff generally cites to *In re Pearl Maxwell*, 281 B.R. 101 (Bankr. D. Mass. 2002) but fails to provide any facts for an analysis to be conducted under the caselaw. Plaintiff also asserts that his "original debt was actually zero because the borrower's financial asset was exchanged for FED's promissory notes in an even exchange." (Docs. 2 at 8; 17 at 8.) Furthermore, Plaintiff cites irrelevant provisions of the UCC, and proceeds to assert that security agreements signed with a lender can be rescinded without proper disclosures under 12 C.F.R. § 226.23, and that 15 U.S.C. §§ 1601, 1692, and 1693 provide remedies for Defendants' deceptive and unconscionable contract. (Docs. 2 at 8–10; 17 at 8–10.) Again, Plaintiff makes broad assertions without any supporting, articulable facts. Without facts to apply the law to, the Court cannot find that Plaintiff has a likelihood of success on the merits. Factor one is not satisfied.

Plaintiff's remaining arguments that there was fraud and deception on the court, a void ultra vires contract, and that federal racketeering laws have been broken, all generally cite to caselaw without factual support. (*See* Docs. 2 at 10–13; 17 at 10–13.) For the same reasons as stated above, the Court finds these claims fail factor one.

        2.      <u>Plaintiff has not demonstrated irreparable harm would occur absent a TRO or permanent injunction.</u>

Factor two is similarly not met. "Irreparable harm is traditionally defined as harm for which there is no adequate legal remedy, such as an award of damages." *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014). Likewise, harms that can later be remedied by an award of damages does not traditionally constitute an irreparable harm.

*United States v. Gear Box Z Inc.*, 526 F.Supp.3d 522, 529 (D. Ariz. 2021).  Here, Plaintiff has a heading dedicated to irreparable injury.  (*See* Docs. 2 at 7; 17 at 7.)  Yet, Plaintiff fails to assert any irreparable harm at all, and merely repeats arguments regarding the legality of the foreclosure.  Moreover, Plaintiff's Motions demand $25.5 million in damages, further indicating that Plaintiff has failed to allege *irreparable* harm if a TRO or permanent injunction is not granted.  (*See* Docs. 2 at 2; 17 at 2); *see also Gear Box Z Inc.*, 526 F.Supp.3d at 529.  Factor two therefore fails.

### 3. The balance of equities does not tip in Plaintiff's favor.

To satisfy factor three of the *Winter* test, the balance of hardships must tip sharply in plaintiff's favor.  *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1133 (9th Cir. 2011).  Plaintiff fails to demonstrate this.  As Defendants point out, between 2016 and 2021, Plaintiff was repeatedly contacted with offers for loan payment assistance by both BANA and SPS.  (Doc. 9 at 11.)  It was not until 2022 that Plaintiff faced a foreclosure sale and eviction.  As discussed above, Plaintiff fails to cite legal authority or articulable facts demonstrating any viable claim for unlawfulness on behalf of the Defendants or the property's foreclosure.  Plaintiff also does not state any irreparable harm or injury because of the foreclosure and pending eviction.  Plaintiff thus does not satisfy factor three.

### 4. Public interest does not favor injunctive relief.

"The public interest inquiry primarily addresses impact on non-parties rather than parties, and takes into consideration the public consequences in employing the extraordinary remedy of injunction."  *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1202 (9th Cir. 2022) (cleaned up).  Here, Plaintiff has failed to articulate facts or legal authority that supports a likelihood that Defendants acted under an invalid Loan Agreement, Deed of Trust, or secured interest in the property.  In contrast, Defendants have provided documents, factual allegations, and legal authority to support the lawfulness of the foreclosure sale—as well as nearly five years of collective efforts to provide Plaintiff with loan repayment assistance opportunities.  Courts will not find that a TRO is in the public interest when "it would shield debtors from the agreed-upon repercussions of a

failure to repay debt." *Karam v. Specialized Loan Servicing LLC*, No. CV-22-00029-TUC-RCC, 2022 WL 2439220, at *2 (D. Ariz. July 5, 2022). For these reasons, Plaintiff has not satisfied factor four.

### IV. CONCLUSION

Accordingly,

**IT IS ORDERED** denying Plaintiff's Motions for a TRO and permanent injunction. (Docs. 2; 17.)

**IT IS FURTHER ORDERED** denying Defendants' Motion to Strike as moot. (Doc. 28.)

Dated this 18th day of November, 2022.

Honorable Susan M. Brnovich
United States District Judge